IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| ROBYN A. YNFANTE, | ) | |
|---|---|---|
| | ) | |
| Pro Se Plaintiff, | ) | |
| | ) | **AMENDED COMPLAINT** |
| v. | ) | |
| | ) | Case No. 22-cv-6831 |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pro Se Plaintiff Robyn A. Ynfante ("Plaintiff") brings this action against Google LLC ("Google") and alleges the following[1]:

## JURISDICTION

1. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

2. First, the amount in controversy exceeds $75,000 because Plaintiff seeks $8,000,000 in damages and injunctive relief.

3. Second, diversity of citizenship exists between the parties. Plaintiff, Robyn A. Ynfante, is a citizen of the State of New York, while the Defendant, Google, is incorporated in the State of Delaware and has its principal place of business in the State of California. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]").

---

[1] This document was prepared with the assistance of New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York.

1

**PARTIES**

4. Plaintiff is a citizen of the State of New York residing at 1751 Amsterdam Avenue, Apartment 1A, New York, NY 10031.

5. Google is a limited liability company incorporated in the State of Delaware and has its principal place of business in the State of California.

**FACTUAL ALLEGATIONS**

6. Plaintiff incorporates by reference the allegations in the foregoing paragraphs.

7. Google is a multinational technology company that focuses on search engine technology and online advertising, among other topics.

8. Google, in combination with its parent company Alphabet, is worth an estimated $1.3 trillion and employs almost 135,000 full-time staff, in addition to many other temporary and internship positions.

9. Google provides a search engine, Google Search, which is the most visited website in the world.

10. Google also provides Google Ads, which is an online advertising platform where advertisers can bid to display brief advertisements, including by placing advertisements at the top of Google Search results.

11. Advertisers can also choose a payment structure that only requires them to pay Google for advertising if someone clicks on an advertisement that the advertisers have placed in Google Search's results. Google financially benefits when a consumer clicks on an advertisement located in the search results.

12. Google Ads is the main source of revenue for Google's parent company, Alphabet, contributing over $168 billion in 2020.

13. After a potential advertiser creates or edits an advertisement for Google Ads, Google claims to automatically start a review process.

14. In order to pass Google's review, Google claims that an advertisement must not violate any of Google's policies.

15. If an advertisement passes Google's review, its status will change to "Eligible" and will start to run on Google Search and/or on other websites, apps, or videos.

16. "Eligible" Google Ads advertisements can be further tailored based on topics and content keywords. Advertisers can choose relevant words to target users making searches using those same terms. These tailored Google Ads advertisements can then appear more prominently in the Google Search results using the specified topics and content keywords.

17. If Google's review indicates that an advertisement violates a policy, its status will change to "Disapproved," which means the advertisement cannot be shown as a Google Ads advertisement. A "Disapproved" Google Ads advertisement will not appear on Google Search results or on other websites, apps, or videos.

18. If a Google Ads advertisement appears in a Google Search result or on other websites, apps, or videos, it must have been affirmatively deemed "Eligible" by Google's own review to certify it does not violate Google's policies.

19. Google Ads publicly claims to prohibit certain kinds of content and conduct, including enabling dishonest behavior (such as those that mislead users) and other unacceptable business practices.

20. According to Google Ads' publicly available advertising policies, Google claims to not allow unacceptable business practices. These prohibited unacceptable business practices include "[s]camming users by concealing or misstating information about the advertiser's

business, product, or service." Examples provided by Google Ads include: "Impersonating brands or businesses by referencing or modifying the brand content in the ads, URL, destinations or misrepresenting yourself as the brand or business in user interactions"; "Enticing users to part with money or information through a fictitious business that lacks the qualifications or capacity to provide the advertised products or services"; and "False advertising of services that could endanger a user's health, life, or safety[.]"

21. Google Ads also publicly claims to prohibit "[a]d destinations that use 'phishing' techniques to gather user information" as an unacceptable business practice. Phishing is the fraudulent practice of purporting to be a reputable company in order to induce individuals to reveal personal information, such as passwords and credit card numbers. An example provided by Google Ads includes websites "that trick users into revealing their personal information by mimicking a trusted entity[.]"

22. Google Ads tells users that "[y]ou should feel confident that ads are not fraudulent or misleading."

23. Google's public claims about its filtering process do not involve any qualifications on its effectiveness. Nor does Google include any warnings for consumers to be cautious about whether an advertisement is attempting to mislead the consumer, to refrain from disclosing certain types of information to the companies it permits to advertise, or even to exercise independent judgment on the advertisements it permits.

24. In recent years, numerous reports and news stories have shown the insufficiency of Google's process to vet and verify Google Ads advertisers. *See, e.g.*, Geoffrey A. Fowler, *Scams Are Showing Up at the Top of Online Searches*, The Washington Post (Sep. 16, 2022 7:00 AM), https://www.washingtonpost.com/technology/2022/09/16/scams-search-ads; Cristiano

Lima, *Google Still Failing to Clamp Down on Ad 'Scams,' Senator Charges*, The Washington Post (Aug. 16, 2022 9:00 AM), https://www.washingtonpost.com/politics/2022/08/16/google-still-failing-clamp-down-ad-scams-senator-charges; Rupert Jones, *Scammers Can Create Fake Business Ads on Google 'Within Hours'*, The Guardian (July 5, 2019 7:01 PM), https://www.theguardian.com/money/2020/jul/06/scammers-can-create-fake-business-ads-on-google-within-hours; Lawrence Adams, *Fake eBay Ad in Google Search Led to Tech Support Scams*, BleepingComputer (Mar. 20, 2019 5:30 AM), https://www.bleepingcomputer.com/news/security/fake-ebay-ad-in-google-search-led-to-tech-support-scams.

25. Google falsely claims that advertisements must not violate their official policies, including enabling dishonest behavior and other unacceptable business practices, and that "[y]ou should feel confident that ads are not fraudulent or misleading." Contrary to Google's public claims, institutions have repeatedly shown that consumers should not feel confident that Google Ads advertisements are not fraudulent or misleading.

26. On or before October 11, 2021, an entity purchased a Google Ads advertisement to facilitate fraud. The entity portrayed itself as a customer service helpline for eBay, an American e-commerce company that facilitates consumer-to-consumer or business-to-consumer sales, despite having no connection to any official, legitimate eBay customer service support.

27. On or before October 11, 2021, this fraudulent advertisement was deemed "Eligible" by Google Ads, leading to it appearing in Google Search results despite having no connection to the official, legitimate eBay customer service systems.

28. Google affirmatively approved the advertisement despite it violating Google's own policies. The advertisement enabled dishonest behavior, which includes products or services

5

that help mislead users. The services provided by the approved Google Ads advertisement accessed by Plaintiff were clearly meant to mislead users by including an eBay logo and fraudulent helpline number.

29. Google failed to properly vet and verify the authenticity and legitimacy of this advertisement that enabled dishonest behavior despite eBay being a widely recognizable brand and company. The fraudulent advertisement did not use an official eBay URL and its header, "Con:tact-E:bay-Helpline-Number-24/7 Customer:Service.," was written in a manner that a cursory review would have suggested to Google was inauthentic and illegitimate.

30. Google affirmatively approved the advertisement despite it engaging in unacceptable business practices, which includes scamming users by concealing or misstating information about the advertiser's business, product, or service or by using phishing techniques to gather user information.

31. The approved Google Ads advertisement misstated information about the advertiser's business being an eBay customer service helpline in violation of Google Ads' policies. Google Ads did not require any verification to confirm the advertisement was for an eBay customer service helpline.

32. Google failed to properly vet and verify the authenticity and legitimacy of this advertisement that misstated information about the advertiser's business being an eBay customer service helpline despite eBay being a widely recognizable brand and company.

33. The approved Google Ads advertisement used phishing techniques to gather information.

34. Google failed to properly review the advertisement that used phishing techniques to gather information about users by pretending to be an eBay customer service helpline.

35. After approving the fraudulent advertisement, Google was paid to promote the advertisement on Google Search or other websites, apps, or videos.

36. After approving the fraudulent advertisement, Google materially contributed to its illegality by prominently placing it at the top of Google Search results. A user would see the fraudulent scammer/phishing website advertisement before any official, legitimate eBay customer service information.

37. On October 11, 2021, Plaintiff used Google Search on his phone to look up "ebay customer service number."

38. At the top of Plaintiff's search results was a Google Ads advertisement stating "Con:tact-E:bay-Helpline-Number-24/7 Customer:Service." In the top left corner of the advertisement was the word "Ad," which appears on all approved Google Ads advertisements. *See* Figure 1. This Google Ads advertisement appeared before any other search results.



*Figure 1.*

39. Because the fraudulent advertisement appeared as a Google Ads advertisement at the top of Plaintiff's search results, it was a previously approved Google Ads advertisement that

had been deemed "Eligible" after Google's mandatory review. Only "Eligible" Google Ads advertisements that have been approved by Google can appear in Google Search results.

40. Plaintiff clicked on the approved Google Ads advertisement and was redirected not to ebay.com but rather to a separate website, ebayhelpline.business.site. The header of the website said "EBAY HELPLINE NUMBER" and contained an image of what appeared to be the official eBay logo. The website also provided a contact number that was "Open 24 hours." *See* Figure 2.



*Figure 2.*

41. Plaintiff called the helpline number that he accessed through the approved Google Ads advertisement to speak to eBay's customer service. Because he accessed the website from an approved Google Ads advertisement, he expected to speak to eBay's official customer service.

42. Plaintiff, believing he was speaking to eBay's customer service because he accessed the webpage and phone number through an approved Google Ads advertisement, was

asked to provide his phone number and email address to confirm his identity. After providing this information, he was texted a confirmation code, which he was asked to share.

43. After Plaintiff gave the confirmation code, the person on the supposed helpline hung up. It was only then that Plaintiff began to realize that the customer service number he accessed through an approved Google Ads advertisement was actually a scammer/phishing website that violated Google Ads' own policies.

44. The scammers later accessed Plaintiff's eBay account, using his email, phone number, and confirmation code, to make purchases on his behalf and create a negative account balance.

45. Through Plaintiff's eBay account, the scammers also gained access to Plaintiff's private personal information, including his full name, home address, and Social Security number.

46. Plaintiff now receives frequent messages from banks and other services about account log-ins that he did not perform.

47. Plaintiff is disabled and unable to afford moving to a new apartment or home and must reside at the address that the scammers gained access through because of him finding their information through an approved Google Ads advertisement.

## COUNT I

**(False Advertisement in Violation of N.Y. Gen. Bus. § 350)**

48. Plaintiff incorporates by reference the allegations in the foregoing paragraphs.

49. Google engaged in false advertisement in violation of New York General Business § 350.

50. At all times herein mentioned, Plaintiff was acting in a reasonable, prudent manner.

51. Google Ads engaged in consumer-oriented conduct, including through its claim that "[y]ou should feel confident that ads are not fraudulent or misleading."

52. Google Ads' conduct, including claiming that "[y]ou should feel confident that ads are not fraudulent or misleading," is itself materially misleading. This statement involves information that is materially important to consumers considering whether to engage with Google Ads advertisements and is likely to affect their choice of or conduct regarding Google Ads advertisements.

53. Plaintiff suffered an injury because of Google Ads' false advertisement. Because Google Ads claims that "[y]ou should feel confident that ads are not fraudulent or misleading," Plaintiff trusted the approved Google Ads advertisement presented at the top of his search results. Plaintiff clicked the Google Ads advertisement because he trusted Google's claim.

## COUNT II

**(Common Law Negligence)**

54. Plaintiff incorporates by reference the allegations in the foregoing paragraphs.

55. At all times herein mentioned, Plaintiff was acting in a reasonable, prudent manner.

56. It was Google's duty to exercise reasonable care and skill in reviewing advertisements, verifying the advertisements' legitimacy, and ensuring advertisements comply with Google Ads' own policies against enabling dishonest behavior and unacceptable business practices, including scamming users by concealing or misstating information about the advertiser's business, product, or service or by using phishing techniques to gather user information.

57. It was Google's duty to vet and verify the authenticity and legitimacy of potentially fraudulent advertisements, especially given its promise that "[y]ou should feel confident that ads are not fraudulent or misleading."

58. In breach of its duty, Google committed careless and negligent acts and/or omissions resulting in a fraudulent, scammer and/or phishing website becoming an official Google Ads approved advertisement that appeared before any other Google Search results, including authentic or legitimate services.

59. Google was negligent in failing to properly vet and verify the authenticity and legitimacy of the scammer and/or phishing website purporting to be an eBay customer service helpline.

60. Google's negligence caused the scammer's and/or phishing website's webpage to be prominently featured at the start of a Google Search result, placing it above eBay's actual, official customer service helpline number.

61. As a direct and proximate cause of Google's negligence, Plaintiff has suffered substantial damages, including developing a negative eBay account balance and having scammers gain access to important personal information, such as his full name, home address, and Social Security number.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

a. award Plaintiff $8,000,000 in damages; AND

b. issue an injunction ordering Google to confirm the origin of these types of advertisements before making them "Eligible" Google Ads advertisements; AND

c. Issue an injunction ordering Google to stop its own deceptive advertising about Google Ads advertisements; AND

d. award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

## PRO SE PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of his knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATE: October 21, 2022 Respectfully submitted,

/S/ Robyn A. Ynfante
Robyn A. Ynfante
1751 Amsterdam Ave., Apt. 1A
New York, NY
212-470-1398
ynfant@gmail.com
PRO SE