UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBYN A. YNFANTE,<br><br>            Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>            Defendant. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>22-cv-6831 (JGK) |

**INTRODUCTION**[1]

Plaintiff, Robyn A. Ynfante, requests that the Court deny Defendant Google LLC's ("Google") motion to dismiss. In the alternative, Plaintiff requests that the Court grant Plaintiff leave to amend Plaintiff's complaint to address any deficiencies identified by the Court. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim. A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks and citation omitted).

In construing Plaintiff's response, Plaintiff asks that the Court read any new additional facts asserted in this opposition brief as supplementing the operative complaint, as the Court may do with pro se litigants. *Nielsen*, 746 F.3d at 63 (overturning the district court's grant of dismissal where the complaint and opposition papers to a motion to dismiss when combined stated a claim upon which relief could be granted).

---

[1] This document was prepared with the assistance of New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY.

## FACTS

Plaintiff notes that the Court has the operative complaint, dkt. 19 ("Am. Compl."), which sets out the relevant facts. Plaintiff refrains from unnecessarily re-stating those same facts here.

## ARGUMENT

**I.   PLAINTIFF HAS STATED A CAUSE OF ACTION FOR NEGLIGENCE AND FALSE ADVERTISING AGAINST GOOGLE**

   **A.   Plaintiff Has Stated a Claim for Negligence.**

Under New York Law, a plaintiff must establish three elements to prevail on a negligence claim: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Aegis Ins. Services, Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quotation marks omitted).

Google argues that Plaintiff's Complaint falls short on two of these elements: (1) that Plaintiff alleges no facts suggesting that Google owed him a duty, Def's Mem. Supp. Mot. Dismiss, dkt. 21 ("Def's Mot. Dismiss"), 17; and (2) that Plaintiff's Complaint contains no factual allegations regarding Google's alleged breach of any duty of care, Def's Mot. Dismiss, 18. However, Plaintiff has successfully stated a claim for negligence.

   **1.   Google owed Plaintiff a duty to exercise reasonable care.**

First, as pleaded, Google owed its users, including Plaintiff, a duty to exercise reasonable care and skill in reviewing advertisements, verifying the advertisements' legitimacy, and ensuring advertisements comply with Google Ads' own policies against enabling dishonest behavior and unacceptable business practices, including scamming users by concealing or misstating information about the advertiser's business, product, or service or by using phishing techniques to gather user information. Am. Compl. ¶ 56.

Google is aware of the threats that fraudulent, scam, and phishing advertisements pose to its users, and the widespread risk of fraudulent Google Ads advertisements that Google negligently fails to properly vet and verify is well documented. *See, e.g.*, Geoffrey A. Fowler, *Scams Are Showing Up at the Top of Online Searches*, THE WASHINGTON POST (Sep. 16, 2022 7:00 AM), https://www.washingtonpost.com/technology/2022/09/16/scams-search-ads; Cristiano Lima, *Google Still Failing to Clamp Down on Ad 'Scams,' Senator Charges*, THE WASHINGTON POST (Aug. 16, 2022 9:00 AM), https://www.washingtonpost.com/politics/2022/08/16/google-still-failing-clamp-down-ad-scams-senator-charges; Rupert Jones, *Scammers Can Create Fake Business Ads on Google 'Within Hours'*, THE GUARDIAN (July 5, 2019 7:01 PM), https://www.theguardian.com/money/2020/jul/06/scammers-can-create-fake-business-ads-on-google-within-hours; Lawrence Adams, *Fake eBay Ad in Google Search Led to Tech Support Scams*, BLEEPINGCOMPUTER (Mar. 20, 2019 5:30 AM), https://www.bleepingcomputer.com/news/security/fake-ebay-ad-in-google-search-led-to-tech-support-scams.

These fraudulent, scam, and phishing advertisements are not merely published by Google, but rather they are *powered* by Google through Google Ads. Google owes its users a duty to exercise reasonable care when vetting and verifying Google Ads advertisements it then prominently places at the top of Google Search results.

Google also owes its users a duty to exercise reasonable care in confirming that Google Ads advertisements comport with Google's published policies. Google's own policies claim to automatically review and approve all submitted or edited advertisements before publishing them in places such as a Google Search result. Am. Compl. ¶¶ 13–15. If a Google Ads advertisement appears in a Google Search result, it must have been affirmatively deemed "Eligible" to appear

in Google Search results by Google's own review to certify that the advertisement does not violate Google's policies. Am. Compl. 18.

To identify the scope of Google's duty, Judge Cardozo's canonical holding is instructive: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928)). Here, the risk includes Plaintiff's exposure to a fraudulent, scam advertisement powered by Google through Google Ads, Am. Compl. ¶¶ 37–47, and Google's duty is in relation to that risk. The duty is not, as Google tries to argue, to identify every single possible fraudulent advertisement that could exist, but rather toe exercise reasonable care when vetting and verifying advertisements and ensuring they comply with Google's policies.

### 2.    Google breached its duty of care.

Second, as pleaded, Google breached its duty of care. Am. Compl. ¶ 58. Defendants specifically request Plaintiff identify the reasonable measures Google could have taken, but did not take, to stop third parties from posting scam advertisements on its platform.

Unlike simply providing a search result, a Google Ads advertisement must be vetted and verified by Google itself before it can ever go public. Further, Google is paid by scam advertisers to promote their illegal content, meaning Google financially benefits from powering the scam advertisements.

Here, the language and content of the ad should have alerted a reasonably prudent Google employee to the identifiable and unreasonable risk of the scam advertisement. The advertisement's title said "Con:tact-E:bay-Helpline-Number-24/7 Customer:Service," *see* Am. Compl. ¶¶ 29, 38 *Figure 1*, which is written in a manner that a review from a reasonably prudent Google employee would have suggested that the advertisement was inauthentic and illegitimate.

The scam advertisement previews the official "https://www.ebay.com/" URL to make it appear users are visiting one website, *see* Am. Compl. ¶ 38, *Figure 1*, but then it redirects users to a completely different, unofficial website, Am. Compl. 40. Despite allowing a scam advertisement to preview "https://www.ebay.com/" on its approved Google Ads advertisement, the approved Google Ads advertisement instead takes users to a different website. If exercising reasonable care, Google would recognize that the scam advertisement is not related to any official eBay website. The advertisement includes a web address, but clicking on that address goes to a completely different website; this is a foreseeable and preventable risk, especially assuming eBay already is an existing customer of Google Ads advertisements.

Further, the text of the advertisement itself should have alerted Google to the risk and danger of the advertisement. The approved Google Ads advertisement states "Con:tact-E:bay-Helpline-Number-24/7 Customer:Service." Am. Compl. ¶ 38. If exercising reasonable care, Google would recognize the scam advertisement is not connected to any authentic or legitimate source.

### 3. Google's negligence resulted in Plaintiff's injury.

Finally, Google's negligence resulted in Plaintiff's injury. Google's negligence caused the scammer's advertisement to be prominently featured at the start of a Google Search result, placing it above eBay's actual, official customer service helpline number. Am. Compl. ¶¶ 37–39, 60. Plaintiff was only able to access this approved Google Ads advertisement because Google approved the advertisement. Am. Compl. ¶ 41. Because of this, Plaintiff's eBay account information, including his full name, home address, and Social Security number, were compromised and he gained a negative eBay account balance. Am. Compl. ¶ 44–45.

### B. Plaintiff Has Stated a Claim for False Advertising.

Plaintiff has also stated a claim for false advertising under New York General Business Law (NYGBL) Section 350. To succeed on a claim for false advertising under Section 350, New York courts use a three-part test, where a party must prove that: (i) the defendant engaged in consumer-oriented conduct; (ii) the conduct was materially misleading; and (iii) the plaintiff suffered injury because of the allegedly deceptive act or practice. *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014); *Brown v. Gov't Emps. Ins. Co.*, 66 N.Y.S.3d 733, 735 (3d Dep't 2017).

Google does not dispute that its conduct was consumer-oriented, but Google argues: (1) that Plaintiff fails to allege that Google's consumer-oriented conduct was materially misleading, Def's Mot. Dismiss, 20; and (2) that Plaintiff did not allege that he was misled by the statement, Def's Mot. Dismiss, 21, which is not an element of a false advertising claim under NYGBL Section 350.

#### 1. Google's conduct was materially misleading.

Google's consumer-oriented conduct was materially misleading. The New York Court of Appeals has defined "materially misleading" as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (2008) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 533 (1995)). To determine whether an advertisement is materially misleading, Section 350 requires courts to consider, among other things, the "representations made by statement, word, design, device, sound or any combination thereof" and the "extent to which the advertising fails to reveal facts material in the light of such representations." NYGBL § 350-a(1).

"A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product" (or service). *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (quoting *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). Providing a service of significantly lower quality than advertised is considered materially misleading. *See, e.g.*, *Vallery v. Bermuda Star Line, Inc.*, 532 N.Y.S.2d 965, 968 (Civ. Ct. N.Y. Co. 1988)).

Here, the safety of using a Google Ads advertisement to access a desired service is important to consumers. A higher risk of encountering a scam advertisement would affect a user's choice of using Google Search to look for resources and selecting Google Ads advertisements to access resources. Google falsely claims that users "should feel confident that ads are not fraudulent or misleading," when in reality scam advertisers are able to get approved within hours. *See* Rupert Jones, *Scammers Can Create Fake Business Ads on Google 'Within Hours'*, THE GUARDIAN (July 5, 2019 7:01 PM), https://www.theguardian.com/money/2020/jul/06/scammers-can-create-fake-business-ads-on-google-within-hours.

Google claims to automatically review all advertisements after a potential advertiser creates or edits an advertisement. Am. Compl. ¶ 13. In order to pass Google's review, Google claims that an advertisement must not violate any of Google's policies. Am. Compl. ¶ 13. Google's presentation that approved Googled Ads advertisements have been reviewed to comport with Google's own policies is also materially misleading.

      **2.    Under NYGBL Section 350, Plaintiff does not have to allege justifiable reliance on the false advertisement to state a claim.**

The New York Court of Appeals has stated that Section 350 does not require that a plaintiff show reliance on an allegedly false advertisement. *Koch v. Acker, Merrall & Condit*

*Co.*, 944 N.Y.S.2d 452, 453 (2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim[.]"). Google cites a few federal decisions after *Koch* to argue that there is a reliance requirement under Section 350, but all of these opinions read in this reliance requirement through pre-*Koch* state case law or other district court opinions that ultimately rely on pre-*Koch* state case law.

To the extent that Google argues that Plaintiff did not allege injury because of the allegedly deceptive act or practice, Google is mistaken. Courts have generally set a low threshold for injury on the grounds that Section 350 was designed to stop practices that have a far greater reach than the instant plaintiff. *See, e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (finding an injury for a plaintiff that purchased a product and did not receive the full value of the purchase); *Dash*, 27 F. Supp. 3d at 362 (recognizing that a price premium paid for a product based on inaccurate representations affected not only a specific plaintiff but consumers as a whole).

## II.  GOOGLE IS NOT ENTITLED TO SECTION 230 IMMUNITY.

A defendant is entitled to Section 230 immunity if they show that: "(1) [they are] a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016).

Here, Google is unable to establish the second and third criteria for Section 230 immunity.

A.   **Section 230 Immunity Is Inapplicable because Plaintiff's Claims Implicate Google's Own Wrongful Conduct Rather than the Conduct of a Third Party.**

Plaintiff's claims are based on Google's own wrongful conduct, including Google's own negligence in vetting and/or verifying advertisements that Google Ads is paid to promote and Google's own false advertising. Plaintiff does not seek to hold Google liable for the third party's scam advertisement, but rather Google's own negligence and false advertising.

B.   **Section 230 Immunity Is Inapplicable because Plaintiff's Claims Do Not Treat Google as the Publisher or Speaker of a Third Party's Information.**

Alternatively, Section 230 does not provide immunity to information content providers, which is defined as "any person or entity that is responsible in whole or *in part*, for the creation or development of information provided through the Internet." 47 U.S.C. § 230(f)(3) (emphasis added).

Here, Plaintiff admits that the third-party scam advertiser is a publisher and speaker of illegal content. Plaintiffs' causes of action are further based "'not on [the defendant's] publishing conduct but on [their] representations regarding such conduct, [which] would not be immunized under [the CDA]." *Moving & Storage Inc v. Panayotov*, CIVIL ACTION NO. 12-12262-GAO (D. Mass. Mar. 12, 2014) (quoting *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *9 (N.D. Cal. 2011). Plaintiff's negligence claim is rooted in Google's failure to properly vet and verify advertisements it claims to approve in accordance with Google's policies, and his false advertising claim is based on Google's materially misleading statements and representations about the safety of Google Ads advertisements.

Additionally, Plaintiff's negligence claim is not about a website that happens to appear on a Google Search result, but rather an approved Google Ads advertisement which Google powered and affirmatively changed in many ways, including: (1) placing the scam advertisement

at the top of a search result, after it was approved, before any other legitimate search results, (2) presenting the scam advertisement in a manner so as to make it distinctive from other search results, including placing it in a unique border to stand out from other results, (3) adding an official Google Ads "Ad" label in the top left corner of the scam advertisement, (4) pairing it with an encouragement that "[y]ou should feel confident that ads are not fraudulent or misleading," and more. These changes materially contribute to the illegality of the underlying conduct and make Google an information content provider within the meaning of Section 230(f)(3).

For the false advertising claim, Google's conduct goes beyond an editorial function to publish, withdraw, postpone, or alter content. Google created and published the advertisement that "[y]ou should feel confident that ads are not fraudulent or misleading." This claim is materially misleading, given the widespread concerns regarding Google's failure to do verify and/or vet advertisers in order to prevent fraudulent, scam advertisements.

### C. Dismissal of a Complaint Is Only Appropriate if Section 230 Immunity Is Evident on the Face of the Complaint.

Finally, dismissal of a complaint pursuant to Section 230 immunity through a motion to dismiss is only appropriate if Section 230's immunity is evident from the face of the complaint itself. *Elliot v. Donegan*, 469 F. Supp. 3d 40, 55–56 (E.D.N.Y. 2020). A defendant "may not 'rely upon the absence of facts not pled in the complaint' to secure CDA immunity on a motion to dismiss." *Id.* at 57–58 (cleaned up) (quoting *Curran v. Amazon*, 2008 WL 472433, at *12 (S.D. W. Va. Feb. 19, 2008).

Here, Google cannot show that it is an interactive computer service user or provider that is treated as the publisher or speaker of information provided by another information content provider in a way that would attach Section 230 immunity to Plaintiff's claims. Because

Plaintiff's claims implicate Google's own conduct and do not treat Google as the publisher or speaker of a third party's information, it would be improper to dismiss Plaintiff's claims at this stage. And let's not forget that when Google was paid to display the fake Advertisements by the scammers they became one and only associated, so Google was not a third party.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the motion to dismiss. In the alternative, Plaintiff requests the Court grant Plaintiff leave to amend Plaintiff's complaint to address any deficiencies identified by the Court, and any other relief that this Court deems just and proper.

Dated: 12/12/2022   Signed by:   /S/ Robyn A. Ynfante
Robyn A. Ynfante
1751 Amsterdam Ave., Apt. 1A
New York, NY
212-470-1398
ynfant@gmail.com
PRO SE