```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────
ROBYN A. YNFANTE,

                   Plaintiff,            22-cv-6831 (JGK)

       - against -                       MEMORANDUM OPINION AND
                                         ORDER
GOOGLE LLC,

                   Defendant.
───────────────────────────────────────
```

**JOHN G. KOELTL**, District Judge:

The plaintiff, Robyn A. Ynfante, brought this action against the defendant, Google LLC ("Google"), in the Supreme Court of the State of New York, New York County, alleging false advertising under N.Y. Gen. Bus. Law § 350 and negligence in connection with a scam advertisement posted on Google's online platform. Google removed the action to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Google now moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is **granted**.

                                I.

The following facts are drawn from the plaintiff's Amended Complaint, ECF No. 19 ("Compl."), and are accepted as true for the purposes of this motion.

Mr. Ynfante is domiciled in New York State. Compl. ¶ 4. Google is a multinational technology company that provides a search engine known as Google Search, as well as an online advertising service known as Google Ads, "where advertisers can bid to display brief advertisements, including by placing [such] advertisements at the top of Google Search results." Id. ¶¶ 7-10. In October 2021, Mr. Ynfante was the victim of a "phishing" scam, into which he was lured by a supposed eBay customer service advertisement placed on a Google search page via the Google Ads service. Id. ¶¶ 37-44. Third-party advertisements placed via Google Ads go through a review process, wherein Google assesses whether the advertisements violate any of its policies, including those against dishonest behavior and scamming. Id. ¶¶ 13-14, 20. Mr. Ynfante alleges that Google approved the advertisement in question without "properly vet[ting] and verify[ing] [its] authenticity and legitimacy," despite Google's assurance in its advertising policies that users "should feel confident that ads are not fraudulent or misleading." Id. ¶¶ 22, 29. As a result, the scam advertisement appeared on the top of Google's search results for "ebay customer service number," leading Mr. Ynfante to believe he would be calling the official eBay customer service helpline. Id. ¶¶ 37-41. After Mr. Ynfante divulged his account information to the scam helpline, the scammers made purchases on behalf of

2

Mr. Ynfante and gained access to sensitive personal information such as his home address and Social Security number. Id. ¶¶ 42-45, 61. Mr. Ynfante is seeking damages of $8,000,000 and injunctive relief.

**II.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

3

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

**III.**

The defendant Google moves to dismiss the complaint on two grounds. First, Google argues that the claims are barred by Section 230 of the Communications Decency Act (the "CDA"), 47 U.S.C. § 230. Second, Google argues that the complaint fails to state a claim for both false advertising and negligence.

**A.**

The defendant argues that Mr. Ynfante's claim is barred by Section 230 of the CDA.

Section 230 of the CDA provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Subject to certain delineated exceptions, see id. § 230(e), Section 230 thus shields a defendant from civil liability when: (1) it is a "provider or user of an interactive computer service," as defined by § 230(f)(2); (2) the plaintiff's claims treat the defendant as the publisher or speaker of information, id. § 230(c)(1); and (3) that information is "provided by" an "information content provider," id. § 230(f)(3), other than the defendant interactive computer service. Force v. Facebook, Inc., 934 F.3d 53, 64 (2d Cir. 2019). Congress enacted Section 230 to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services,

5

unfettered by Federal or State regulation." FTC v. LeadClick Media, LLC, 838 F.3d 158, 173 (2d Cir. 2016) (citing 47 U.S.C. § 230(b)(2)). "In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." Force, 934 F.3d at 64.

In this case, it is plain that Section 230 protects Google from liability in the negligence and false advertising action brought by Mr. Ynfante. First, Google is the provider of an interactive computer service. The Court of Appeals for the Second Circuit has explained that "search engines fall within this definition," LeadClick Media, 838 F.3d at 174, and Google is one such search engine. See, e.g., Marshall's Locksmith Serv. Inc. v. Google, LLC, 925 F.3d 1263, 1268 (D.C. Cir. 2019) (holding that the definition of "interactive computer service" applies to Google specifically).

Second, there is no doubt that the complaint treats Google as the publisher or speaker of information. See, e.g., Compl. ¶¶ 27, 34. Section 230 "specifically proscribes liability" for "decisions relating to the monitoring, screening, and deletion of content from [a platform] -- actions quintessentially related to a publisher's role." Green v. Am. Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003). In other words, Section 230 bars any claim that "can be boiled down to the failure of an interactive

6

computer service to edit or block user-generated content that it believes was tendered for posting online, as that is the very activity Congress sought to immunize by passing the section." Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1172 n.32 (9th Cir. 2008). In this case, the plaintiff's causes of action against Google rest solely on the theory that Google did not block a third-party advertisement for publication on its search pages. But for Google's publication of the advertisement, the plaintiff would not have been harmed. See, e.g., Compl. ¶¶ 38-39, 61. The plaintiff therefore seeks to hold Google liable for its actions related to the screening, monitoring, and posting of content, which fall squarely within the exercise of a publisher's role and are therefore subject to Section 230's broad immunity.

Third, the scam advertisement came from an information content provider distinct from the defendant. As the complaint acknowledges, the advertisement was produced by a third party who then submitted the advertisement to Google for publication. See id. ¶ 26. It is therefore plain that the complaint is seeking to hold the defendant liable for information provided by a party other than the defendant and published on Google's platform, which Section 230 forecloses.

The plaintiff attempts to escape Section 230's broad scope by arguing that the claims are based on Google's own conduct

7

rather than that of the scammer. Specifically, the plaintiff focuses on Google's statement that users "should feel confident that ads are not fraudulent or misleading." Id. ¶ 53. However, the plaintiff's claims are fundamentally premised on Google's actions related to publishing the scam advertisement. In attempting to hold Google liable for negligence, the plaintiff asserts that Google had a duty to "vet and verify the authenticity and legitimacy of potentially fraudulent advertisements." Id. ¶ 57. Vetting and verifying are analogous to the "quintessential[]" duties of a publisher to "screen[]" and "monitor[]" content. See Green, 318 F.3d at 470-71 ("[H]olding AOL liable for its alleged negligent failure to properly police its network for content transmitted by its users . . . would treat AOL as the publisher or speaker of that content."). Likewise, the only alleged harm at the center of the plaintiff's false advertising claim stems from the plaintiff's interaction with the scam advertisement published on Google's platform. See Compl. ¶ 53. Indeed, courts have recognized claims similar to the plaintiff's as unsuccessful attempts to avoid Section 230 protections through artful pleading. See, e.g., Kimzey v. Yelp! Inc., 836 F.3d 1263, 1266 (9th Cir. 2016) (rejecting the plaintiff's attempt to hold Yelp liable for "causing a [negative] review from another site to appear on its page" and for "causing the statements to appear as a promotion

on [a] search engine" as "creative pleading" designed to circumvent Section 230); Goddard v. Google, Inc., No. 08-cv-2738, 2008 WL 5245490, at *4 (N.D. Cal. Dec. 17, 2008) (finding that the plaintiff's attempt to hold Google liable for its "acceptance of tainted funds from fraudulent mobile content providers" was an "impermissible recharacterization" of a claim fundamentally based on Google's publishing of third-party content).

Mr. Ynfante also attempts to plead around Section 230 by alleging that Google helped to develop the scam advertisement by taking such actions as placing it at the top of the search page, distinguishing it from other search results, and adding an official "Ad" label in the top left corner of the advertisement. Pl.'s Opp'n, ECF No. 24, at 9-10. These allegations seek to take advantage of the fact that Section 230 protection does not apply if the website operator goes beyond merely publishing the content and is instead "responsible, in whole or in part, for creating or developing" it. Roommates.com, 521 F.3d at 1162; see 47 U.S.C. § 230(f)(3).

However, this attempt fails. Under the "material contribution test" adopted by the Court of Appeals for the Second Circuit, "a defendant will not be considered to have developed third-party content unless the defendant _directly_ and _materially_ contributed to what made the content itself

9

unlawful." Force, 934 F.3d at 68 (emphasis added). This test "draws the line at the crucial distinction between, on the one hand, taking actions to display actionable content and, on the other hand, responsibility for what makes the displayed content itself illegal or actionable." Id. Google's alleged actions did not directly and materially contribute to the content of the scam advertisement nor to its unlawfulness. Features such as the official "Ad" label are instead "neutral tools for navigating websites" that "merely provide a framework that could be utilized [by others] for proper or improper purposes." See Roommates.com, 521 F.3d at 1172, 1174 n.37. In other words, Google did nothing to make the content of the advertisement itself more unlawful. Rather, the defendant's alleged actions merely served to distinguish the advertisement as an advertisement.

Accordingly, the plaintiff's claims are barred by Section 230 of the CDA. Because this Court has determined that the plaintiff's claims are barred by Section 230 of the CDA, it need not address the merits of the defendant's arguments that the plaintiff's complaint fails to state a claim for false advertising and negligence.

**B.**

Google argues that this case should be dismissed with prejudice. However, because this is the first dismissal, and particularly because the plaintiff is proceeding pro se and has

requested an opportunity to amend, within 30 days of the date of this decision the plaintiff may file a motion to file an amended complaint. See Fed. R. Civ. P. 15(a)(2); Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014). In support of that motion, the plaintiff should attach a copy of the proposed amended complaint and explain how the amended complaint is consistent with Section 230. To overcome Section 230, any such amended complaint would need to contain specific, concrete, plausible allegations, beyond what has already been alleged, permitting an inference that Google directly and materially contributed to the creation or development of the scam advertisement. See, e.g., Roommates.com, 521 F.3d at 1174 (explaining that it must be "very clear that the website directly participate[d] in developing the alleged illegality" for Section 230 not to apply).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted without prejudice**.

Within **30 days** of the date of this decision, the plaintiff may file a motion to file an amended complaint. If the plaintiff fails to file such a motion by that date, this action will be dismissed with prejudice. No pre-motion conference is necessary.

11

The Clerk is directed to close Docket No. 20. The Clerk is directed to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff and to note such mailing on the docket.

**SO ORDERED.**

Dated:   New York, New York
         June 1, 2023

_____
John G. Koeltl
United States District Judge